**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 23-cr-00427-DLF** |
| | ) | |
| **DAVID KUNTZ** | ) | |
| | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

<u>**DEFENDANT DAVID KUNTZ'S MOTION TO DISMISS COUNT ONE OF THE
SECOND SUPERSEDING INDICTMENT**</u>

William L. Shipley, Jr., Esq.
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

NOW COMES, Defendant David Kuntz by and through his undersigned counsel of record, William L. Shipley, and respectfully files this Motion to Dismiss[1] Count One of the Second Superseding Indictment.

The Federal Rules of Criminal Procedure state that an indictment must include "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). A motion to dismiss may challenge "a defect in the indictment" if "the basis of the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B). If, for example, the indictment fails to "state an offense," a defendant can move for dismissal. Fed. R. Crim. P. 12(b)(3)(B)(v). In ruling on a defendant's motion to dismiss, the Court must assume that the factual allegations in the indictment are true and limit its review to "the face of the indictment, and more specifically, the language used to charge the crimes." *United States v. Sunia*, 643 F. Supp. 2d 51, 59-60 (D.D.C. 2009) (internal quotation marks omitted). The issue that the Court is required to address in response to a defendant's motion to dismiss is thus: "[W]hether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011).

Count One of the Second Superseding Indictment charges the Defendant Kuntz with conspiracy to prevent officers – Members of Congress and law

---

[1] This motion is a product of parts of other similar motions filed in other cases involving the events of January 6, 2021.  Not all portions of this motion are the original work of the undersigned counsel; however, citing to motions filed in other cases would be impracticable.

enforcement officers -- from discharging their duties in violation of 18 U.S.C. §

372. This Count should be dismissed because

the terms "office," "officer," and "officer of the United States," as used in federal

criminal statutes -- unless there is unambiguous language to the contrary --

are presumed to have their "constitutional meaning" as set forth in the

Appointments Clause of the Constitution (Article II, § 2, cl. 2). Members of

Congress are not "officers" under the Appointments Clause. Because Members

of Congress are not Article II "officers," they likewise are not "officer[s] of the

United States" as that term is used in § 372. Additionally, § 372's reference to

preventing a "person from accepting . . . any office, trust, or place of

confidence" clearly excludes Members of Congress, who do not "accept" their

offices but, rather, assume them following election.  The phrase "office, trust,

or place of confidence," moreover, is a clear reference to language used in

presidential commissions issued to "officers of the United States," confirming

that Members of Congress, who do not receive commissions, are not protected

by the

statute.

        The second group, "law enforcement officers" are also not "officers" as

used in Sec. 372. When referring to members of law enforcement as "officers"

in criminal statutes, Congress has made that reference explicit so as to

distinguish law enforcement officers from "officers" of the Executive Branch.

U.S. Capitol Police are not only not "officers" under the "constitutional

meaning" of that term, they are also not members of the Executive Branch as

the Capitol Police are part of the Legislative Branch of the U.S. Government.

Accordingly, Count 1 must be dismissed, as it fails to state an offense that alleges each of the elements of an offense under 18 U.S.C. Sec. 372.

### A.    Members of Congress are not "officer[s] of the United States" Under 18 U.S.C. § 372.

Count One alleges that Defendant Kuntz and co-conspirators violated 18 U.S.C. § 372 in that they "did conspire with others known and unknow, to prevent by force, intimidation, and threat, any person, that is, *Members of the United States Congress and law enforcement officers*, from discharging any duties of any office, trust, and place of confidence under the United States, and to induce by force, intimidation, and threat, any officer of the United States, that is, Members of the United States Congress and law enforcement officers, to leave the place where their duties as officers were required to be performed." (Emphasis added).

The text of 18 U.S.C. § 372 provides:

> If two or more persons in any State, Territory, Possession, or District conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof, or to induce by like means any officer of the United States to leave the place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties, each of such persons shall be fined under this title or imprisoned not more than six years, or both.

Count One must be dismissed, as Members of Congress do not hold "any office, trust, or place of confidence" and are not "officer[s] of the United States" within the meaning of § 372.

### 1.    As Used in § 372, "Officers of the United States" Are Appointees, Not Elected Officials.

While there is a dearth of case law directly addressing the issue of whether a Member of Congress is an "officer of the United States" under § 372, the United States Supreme Court has made clear for more than 150 years that this term, as used in federal statutes, mirrors its usage in Article II, § 2, Cl. 2 of the Constitution (the Appointments Clause).  Because Members of Congress are not "officer[s] of the United States" as that term is used in the Appointments Clause, they likewise are not "officers" for purposes of § 372.

In *United States v. Hartwell*, 73 U.S. (6 Wall.) 385, 393 (1868), the Supreme Court set forth the common 19th century understanding of the terms "office" and "officer" as used in federal criminal statutes. The defendant, a Treasury Department clerk, was indicted under a federal statute punishing those who embezzled, including "officers and other persons charged by [The General Appropriation Act] with the safe-keeping . . . [of] the public money[.]" Id.

The defendant argued that he was not an "officer" within the meaning of the statute, as he was not "appointed" by the President. Id. at 392-93. The Court ruled against the defendant, but first provided the Court's understanding of the term "office": "[A]n office is a public station, or employment, conferred by the appointment of government." Id. at 393 (emphasis added). By implication the Court's conclusion was that the term "officer" in the statute was intended by Congress to have the same meaning as in the Appointments Clause. *Id.* at 394, n. 9. Finding that the Secretary of the Treasury was, in turn, authorized to

appoint clerks in his department, the Court reasoned that the defendant was an "officer" under the Appointments Clause and, thus, an "officer" within the meaning of the statute. *Id.*

A decade later in *United States v. Germaine*, 99 U.S. 508, 509 (1878), the defendant, a surgeon hired by the Commissioner of Pensions, had been indicted for extortion while serving as, allegedly, an "officer of the United States."  Arguing for the indictment's dismissal, the defendant "insist[ed] that art. 2, sect. 2, of the Constitution, prescribing how officers of the United States shall be appointed, [was] decisive of the case before" the Court. *Id.* at 509. The Court agreed, holding that the defendant was not an "officer of the United States" within the meaning of the extortion statute. *Id.* at 512. The Court explained that, absent unambiguous language to the contrary, the term "officer of the United States," when used in criminal statutes, is limited to individuals appointed pursuant to the Appointments Clause:

> It is, therefore, not to be supposed that Congress, when enacting a criminal law for the punishment of "officers of the United States", intended to punish any one not appointed [under the Appointments Clause].  If the punishment were designed for others not officers as defined by the Constitution, words to that effect would be used, as servant, agent, person in the service or employment of the government[.]

*Id.* at 509-10.  *United States v. Smith*, 124 U.S. 525, 531-32 (1888) ("A person in the service of the government who does not derive his position from [the Appointments Clause] is not an officer of the United States in the sense of the Constitution."); *United States v. Mouat*, 124 U.S. 303, 307 (1888) ("Unless a person in the service of the Government . . . holds his place by virtue of [the

Appointments Clause], he is not, strictly speaking, an officer of the United States.").

Accordingly, when used in federal criminal statutes, the terms "office," "officer," and "officer of the United States," absent unambiguous language to the contrary, refer to government appointees.  As the Supreme Court, summarizing the aforementioned cases in 1925, observed: "It is quite true that the words 'officer of the United States,' when employed in the statutes of the United States, is to be taken usually to have the limited constitutional meaning." *Steele v. United States*, 267 U.S. 505, 507 (1925) (emphasis added).

      2.    <u>Members of Congress are not "officers" under the Appointments Clause</u>.

Members of Congress are not "officers" under the Appointments Clause and, accordingly, are not "officers" under § 372.  As the Supreme Court recently noted: "The people do not vote for the 'Officers of the United States.' U.S. CONST. ART. II, § 2, cl. 2." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 551 U.S. 477, 498 (2010) (quoting The Federalist No. 72, p. 487 (J. Cooke ed. 1961) (A. Hamilton)).  "[N]o person who is an officer of the United States may serve as a Member of the Congress." *Bowsher* v. Synar 478 U.S. 714, 722 (1986).  As confirmed by the Supreme Court, Members of Congress are not "officers" under the Appointments Clause and, as such, they are not "officers" for purposes of § 372.

      3.    <u>Members of Congress do not accept or hold "offices, trusts, or places of confidence."</u>

Section 372 prohibits conspiracies aimed at "prevent[ing] any person from accepting or holding any office, trust, or place of confidence under the United States[.]" 18 U.S.C. § 372. Members of Congress clearly do not hold an "office, trust, or place of confidence." Most telling: an "office, trust, or place of confidence" are stations held by those who accepted their positions. Members of Congress do not "accept" their offices—they assume or take office. A person "accepting" an "office, trust, or place of confidence," moreover, presupposes that someone offered that person the "office, trust, or place of confidence" they accepted. Since these positions are "under the United States," the offeror of the jobs, logically, has authority to dole out government jobs, e.g. the President via the Appointments Clause. Members of Congress, by contrast, run for their offices and are elected by the voters. They do not "accept" government job "offers."

Accordingly, the phrase "office, trust, or place of confidence" in § 372 cannot include Members of Congress.  Congress's use of the word "accepting" in the statute forecloses any suggestion that § 372 was intended to cover elected officials such as Members of Congress.  Additionally, Congress's use of the phrase "any person . . . holding any office . . . under the United States" in § 372 further proves that Members of Congress are not covered by the statute's language. This language was lifted from the Constitution's "Ineligibility Clause," wherein Members of Congress are prohibited from simultaneously holding offices: "[N]o Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office." U.S. CONST., ART. I, § 6, cl. 2 (emphasis added).  It defies credulity to conclude that Congress

intended to include itself in § 372 by using verbatim language from the Constitution's Ineligibility Clause, which bans Members of Congress from holding offices.

Consistent with Supreme Court precedent in *Hartwell*, *Germaine*, *Smith*, *Mouat*, and *Steele*, the terms "office" and "officer of the United States" are presumed to have, absent unambiguous language to the contrary, their "constitutional meaning."  Congress did not clearly express with unambiguous language an intention to use the term "officers" in a broader and more general manner, and Members of Congress are therefore not included within that term as it is used in § 372.

By the statute's plain language, to secure an "office, trust, or place of confidence," a person must accept that position, confirming that these stations are appointed, not elected, positions. Second, § 372's protections apply to "a person . . . holding any office . . . under the United States"; by comparison, the Constitution, in practically identical language, states that "no Person holding any Office under the United States" shall be a Member of Congress. U.S. CONST., ART. I, § 6, cl. 2. Accordingly, the stations listed in § 372 unambiguously exclude Congress.

4.     <u>Members of Congress do not hold places of "trust" and "confidence."</u>

Historical context is important to understanding the phrase "office, trust, or place of confidence." What might have prompted Congress to enact a statute aimed at protecting government officials who, apparently, were being frightened away from their posts?

As detailed below, Congress was responding to Southern secession in 1861 when it passed a sweeping statute prohibiting conspiracies, including punishing those who, "by force, or intimidation, or threat [] prevent any person from accepting or holding any office, or trust, or place of confidence, under the United States . . .[.]." 12 Stat. 284 (1861). President Lincoln, just before passage of the 1861 Act, told Congress that "[w]ithin [the southern] States all the forts, arsenals, dockyards, custom-houses, and the like, including movable and stationary property in and about them, had been seized and were held in open hostility to this Government." Accordingly, the historical context surrounding the passage of the 1861 Act confirms that the terms "office, trust, or place of confidence" relate to military and civilian officers, who Congress knew were literally being driven away from their posts by Confederate forces and sympathizers in the Southern States which were in the process of seceding from the Union between January and June 1861.

The terms "office, trust, or place of confidence" are not opaque. The phrase unambiguously refers to presidential appointees, i.e., military officers, executive branch officials, and federal judges. In fact, the terms "office," "trust," and "confidence" are used in every commission signed by the President in relation to officers appointed pursuant to the Appointments Clause. For example, military officers

receive a commission stating that the President has "trust and confidence" in

their abilities to "discharge the duties of their office" another phrase used in §

372:

> Know Ye that, reposing special trust and confidence in the patriotism,
> valor, fidelity and abilities of . . ., I [the President] do appoint [John Doe]
> [an Ensign] in the Navy to rank as such[.] . . . This Officer will therefore
> carefully and diligently discharge the duties of the office to which appointed[.]

https://www.expressmilitary.com/navy-dd-1.htm. (emphasis added).

Postmasters in the 19th century received similarly-worded commissions.

Federal judges  receive a commission noting the President's "trust and

confidence" in their ability to handle their "office."28  The wording of

Presidential commissions remains virtually unchanged since America's

founding. The phrase "office, trust, or place of confidence" in § 372 refers,

accordingly, to the ubiquitous commissions that have been issued since the

founding to "officers of the United States" by the President.  Presidential

commissions of "trust and confidence" are issued to "officers" pursuant to the

Commissions Clause of the Constitution. Const. Art. II, § 3, cl. 4 ("[The

President] shall commission all the officers of the United States.").

A Member of Congress does not receive a commission because he or she,

unlike federal judges, executive branch appointees, and military officers, is not

an "officer of the United States" and, hence, does not hold an "office, trust, or

place confidence." See, e.g., *Embry v. United States*, 100 U.S. 680, 683 (1879)

(reprinting language for a Postmaster commission: "Know ye, that, reposing

special trust and confidence in the integrity . . . of Bowling Embry, I have . . .

appoint[ed] him deputy postmaster at Nashville . . . to execute . . . the duties of

that office[.]").  28 https://dcchs.org/wp-

content/uploads/2019/03/HarryTrumanLarge.jpg

29 R . Swain & A. Pierce, The Armed Forces Officer, Nat'l Defense U. Press

(2017),

https://ndupress.ndu.edu/Portals/68/Documents/Books/AFO/Armed-

Forces-Officer.pdf.

> 5.   <u>Constitutional provisions confirm that Members of Congress
> are not"officers."</u>

Early constitutional provisions, moreover, confirm that Members of

Congress do not hold an "office, trust, or place of confidence" within the

meaning of § 372. First, the Constitution makes clear that Members of

Congress cannot simultaneously hold offices. See U.S. CONST., ART. I, § 6, cl.

2 ("no Person holding any Office under the United States[] shall be a Member of

either House[.]").

Next, the Constitution's plain text demonstrates that Members of

Congress do not hold an "office of trust":

> Each State shall appoint . . . a Number of Electors, equal to the whole
> Number of Senators and Representatives to which the State may be
> entitled in the Congress: but no Senator or Representative, or Person
> holding an Office of Trust or Profit under the United States, shall be
> appointed an Elector.

U.S. CONST. ART. II, § 1 (emphasis added).  The drafters of the Constitution

designated three groups ineligible to serve as electors that did not overlap –

Senators, Representatives, and Persons holding an Office of Trust or Profit

under the United States.

At common law, an "office of trust" or "office of profit" referred exclusively to employees of the executive and judiciary, not to legislators. *See* Benjamin Cassidy, You've Got Your Crook, I've Got Mine: Why the Disqualification Clause Doesn't Always Disqualify, 32 Quinnipiac L. Rev. 209, 278-80 (2014). See also, e.g., DEL. CONST. of 1776, art. XXII ("Every person who shall be chosen a member of either house, or appointed to any office or place of trust . . . shall take [an] oath . . . ."); KY. CONST. of 1799, art. II, § 26 ("No person . . . whilst he holds or exercises any office of profit under this commonwealth, shall be eligible to the general assembly . . . ."); LA. CONST. of 1812, art. VI, § 14 ("No members of Congress, nor person holding or exercising any office of trust or profit under the United States . . . shall be eligible as a member of the general assembly of this State, or hold or exercise any office of trust or profit under the same.");  The Congress that passed § 372 understood that the phrase "office, trust, or place of confidence" did not include them.

Absent unambiguous language to the contrary, the terms "office," "officer," and "officer of the United States" are, under binding Supreme Court precedent, presumed to have their "constitutional meaning,"  Under that meaning, Members of Congress are not included in § 372. *Steele*, 267 U.S. at 507 ("It is quite true that the words 'officer of the United States,' when employed in the statutes of the United States, is to be taken usually to have the limited constitutional meaning" under the Appointments Clause); Cf. *Lamar v. United States*, 241 U.S. 103, 112-13 (1916) (holding that a Member of Congress was an "officer" within the meaning of Penal Statute § 32 because of that statute's "comprehensive terms," including the phrase "any officer of the

Government," which evinced a congressional intent to go beyond Appointments Clause "officers.").

**B.**   **"Law Enforcement Officers" are not included within the meaning of § 372.**

The same presumption of "constitutional meaning" applies to the Indictment's inclusion of "law enforcement officers" within the scope of § 372. Whether members of the Capitol Police, Metropolitan Police Department, or any other law enforcement agency present at the Capitol on January 6, 2021, for all the same reasons set forth above with regard to Members of Congress, none of those peace officers are an "officer" or office holder within the meaning of the statute.

This is made clear by the fact that Congress did resort to the type of explicit and unambiguous language required by the Supreme Court when it did criminal conduct targeting such law enforcement officers in the performance of their duties, i.e, 18 U.S.C § 111.  While the caption references "officers or employees", the text of the statute expressly provides that it covers "persons designated in section 1114" of of Title 18.  That section makes it a federal crime to kill "officers or employees" of "any agency in any branch of the United States Government, including "members of uniformed services."

Similarly, in 18 U.S.C. Sec. 231(a)(2), Congress expressly criminalizes acts that obstruct, impede, or interfere with "fireman" and "law enforcement officers" engaged in the lawful performance of their official duties.

When Congress intends to include uniformed law enforcement officers working for any agency or branch of the federal government, it uses language

making that clear.  No such language or clarity is present in Sec. 372 as charged in Count One of the Second Superseding Indictment.

## CONCLUSION

WHEREFORE, Defendant David Kuntz respectfully requests this Court dismiss Count One of the Second Superseding Indictment on the basis that it fails to allege an offense as Members of Congress and uniformed law enforcement officers are not among the victims of the criminal conspiracies prohibited by that Section.

Dated: September 14, 2024          Respectfully submitted,

_____
William L. Shipley, Jr., Esq.
PO BOX 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com